**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IGOR MALKOVSKIY AND AHMED AMER, ON BEHALF OF THEMSELVES AND THOSE SIMILARLY SITUATED,** : | |
| **Plaintiffs,** : | **Civil Action No.: 11-2227** |
| : | |
| **v.** : | **OPINION** |
| : | |
| **THE SHAW GROUP, INC., A LOUSIANA CORPORATION, AND SHAW  ENVIRONMENTAL, INC., A LOUISIANA CORPORATION,** : | |
| **Defendant.** : | |

**SALAS, District Judge**

## I.    Introduction

Defendant Shaw Environmental, Inc. ("SEI") seeks dismissal of Igor Malkovskiy's and

Ahmed Amer's (collectively "Plaintiffs") Amended Complaint ("Am. Compl.") asserting a

putative wage and hour collective action under the Fair Labor Standards Act ("FLSA") and a

putative class action under the New Jersey Wage and Hour Law ("NJWHL") by way of a motion

for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (*See* Docket

Entry No., "D.E." 22-1).   This Court has jurisdiction under 28 U.S.C. § 1331, 29

U.S.C. § 216(b), 28 U.S.C. § 2201 *et seq.*, and 28 U.S.C. § 1367.  The Court has considered the

parties' submissions in support of and in opposition to the instant motion, and decides the matter

without oral argument pursuant to Rule 78(b).  For the reasons set forth below, SEI's motion is

granted in part and denied in part.  The Court grants, in part, SEI's motion because the Court

- 1 -

finds as a matter of law that Plaintiffs are salaried, exempt employees under the FLSA's "salary basis" test.  However, the Court denies, in part, SEI's motion because the Court does not dismiss the action entirely, reserving on the issue of whether Plaintiffs meet the "duties" tests under the FLSA, an issue that the parties did not fully brief for this motion.[1]

## II.    Background

Plaintiffs were construction inspectors and employees of Defendant SEI,[2] (Am. Compl. ¶¶ 1, 2), a Louisiana Corporation that operates and conducts business in New Jersey.  (*Id.* ¶¶ 5, 6).  Mr. Malkovskiy worked for SEI in New Jersey from approximately August 2003 to June 2009, and Mr. Amer worked for SEI in New Jersey from approximately 2007 to February 2010.  (*Id.* ¶¶ 3, 4).  Plaintiffs bring "a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a Class consisting of all current and former construction inspectors of Defendant[] in the State of New Jersey during the period of April 19, 2009 to the present ('the Class')."  (*Id.* ¶ 24).

On April 19, 2011, Plaintiffs filed their initial complaint.  On April 25, 2011, Plaintiffs filed their Amended Complaint and on August 1, 2011, SEI filed its Answer.  (D.E. 19).  In their Amended Complaint, Plaintiffs assert that they were "non-exempt, hourly paid construction inspectors" and that "Plaintiffs and those similarly situated employees were only paid regular time for their overtime hours."  (*Id.* ¶¶ 2, 17).  Plaintiffs further assert that "[i]f Plaintiffs and

---

[1] The Court's focus in this Opinion is Plaintiffs' challenge to SEI's policy and practice under the "salary basis" test for administrative exemption under FLSA.  To that end, the Court finds that SEI's policy and practice do not jeopardize Plaintiffs' exempt status.  Because the parties have not squarely and fully addressed the FLSA's "duties" tests in their briefs for this motion, the Court will not decide that issue at this time.  (SEI Moving Br. at 7 n.8; Pl. Opp. Br. at 1 n.2; SEI Reply Br. at 2 & n.1).  To the extent Plaintiffs wish to pursue their claims, pursuant to this Opinion, they could do so under the duties tests alone, and therefore it would be inappropriate for the Court to dismiss the action at this time.

[2] On August 1, 2011, via stipulation, the parties dismissed from the case SEI's initial co-defendant, the Shaw Group, Inc.  (D.E. 18).  At the time Plaintiffs filed their Amended Complaint, the Shaw Group, Inc. was still involved in the case, and therefore the allegations in the Amended Complaint refer to both Defendants, SEI and the Shaw Group, Inc.  The Court will discuss allegations against SEI only.

those similarly situated employees worked less than forty (40) hours in one week, they were only paid their hourly rate multiplied by the actual hours they worked."  (*Id.* ¶ 18).  As such, "Plaintiffs and the other similarly situated construction inspectors were hourly paid employees who were not paid time and one-half compensation for each overtime hour worked."  (*Id.* ¶ 19).

More specifically, in Count I—Recovery of Overtime Compensation in Violation of 29 U.S.C. § 207—Plaintiffs allege that SEI willfully violated the FLSA because "Plaintiffs and those similarly situated employees are/were entitled to be paid time and one-half their regular rate of pay for each hour worked in excess of forty (40) per work week," and instead were only paid "straight time for their overtime hours worked."  (*Id.* ¶¶ 34, 35, 37).  In Count II, Plaintiffs allege that SEI violated the NJWHL, N.J. Stat. § 34:11-56a4, because "Plaintiffs and the Class were only paid straight time for their overtime hours, and were not paid time and one-half their hourly wage rate."  (*Id.* ¶ 45).  In Count III, Plaintiffs seek declaratory relief on Counts I and II.  (*Id.* ¶¶ 48-59).  Plaintiffs are seeking class-wide notice to all Construction Supervisors of their right to join this lawsuit, pursuant to 29 U.S.C. § 216(b); compensation for unpaid overtime hours, liquidated damages, and reasonable attorneys' fees and costs under the FLSA; class certification pursuant to Rule 23; and unpaid overtime compensation and reasonable attorneys' fees and costs under New Jersey State Minimum Wage Law.  Plaintiffs also seek a declaration that an employer-employee relationship existed between Plaintiffs and SEI and that SEI had a legal duty to pay Plaintiffs' proper compensation under the FLSA, which resulted in SEI's violation of the FLSA by not paying Plaintiffs correct overtime and failing to provide a good faith defense.  SEI answers that Plaintiffs and the class of construction inspectors were salary-paid, exempt employees.  (Answer ¶¶ 5, 17, 19, 35, 45, 53).

On November 11, 2011, SEI filed a motion for judgment on the pleadings pursuant to Rule 12(c).  SEI's argument is based on the premise that nothing in controlling administrative regulations or related case law prohibits employers from taking two consecutive four-hour deductions from an exempt employee for a full-day, eight-hour absence.  SEI argues, "[t]here is nothing in the FLSA or NJWHL statutory language or regulations that prohibit[s] an employer from spreading the payroll deduction for a full-day absence over two workweeks or pay periods."  (SEI Moving Br. at 2).  As such, SEI did not deduct partial-day absences from Plaintiffs' payroll, and instead spread a full-day absence over two pay periods.  (*Id.* at 1-2).  In opposition, Plaintiffs make two separate, but closely related, arguments.  First, Plaintiffs argue that SEI "engaged in an actual practice of making unlawful deductions . . . . [because] it is undisputed that Defendant had a practice of docking Plaintiffs in partial day increments, when Plaintiffs missed work on a Friday and lacked available sick and/or personal days."  (Pl. Opp. Br. at 4).  Second, SEI "maintained a policy that created significant likelihood of such deductions," (*id.*), because SEI's workweek for payroll purposes begins and ends at noon each Friday, inherently resulting in partial-day deductions for a Friday absence.  (*Id.* at 1).  Below, the Court rejects both arguments.

## III.    Legal Standard

### A.      Rules 12(c) and 12(b)(6)

Rule 12(c) provides, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  As explained by the Third Circuit, "[g]ranting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus this court requires 'the movant to clearly establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  *Inst. for*

*Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991), *cert. denied*, 502 U.S. 909 (1991) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).  Under Rule 12(c), a court must view the facts in the pleadings and any inferences drawn therefrom in the light most favorable to the nonmoving party, and the motion should not be granted "unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law." *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008) (internal citation omitted).

"The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6)." *Allah v. Hayman*, 442 F. App'x 632, 635 (3d Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004)).  To that end, Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."  The pleading standard announced by Rule 8 does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted).  In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted).  In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and

- 5 -

draw all reasonable inferences in favor of the non-moving party.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Furthermore, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011).

**B.    The FLSA**

The FLSA prohibits an employer from employing any worker "for a workweek longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the [employee's] regular rate for the excess hours."  *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 183 (3d Cir. 1988) (quoting 29 U.S.C. § 207(a)(1)).  The Act includes an exemption for "any employee employed in a bona fide executive, administrative, or professional capacity . . . ."  *Id.* (quoting 29 U.S.C. § 213(a)(1)).  The regulations define an administrative employee as an employee who meets the "salary basis" and "duties" tests: "(1) [c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . . ; (2) [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. 541.200(a).  The regulations define "salary basis" as "a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to

reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). More specifically, a salaried worker's pay cannot be "docked" because "a salaried employee is paid the same regardless of the number of hours worked." *Wolfslayer v. Ikon Office Solutions, Inc.*, No. 03-6709, 2004 WL 2536833, at *5 (E.D. Pa. 2004) (citing *Klein v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 990 F.2d 279, 284 (7th Cir. 1993)). "[E]xemptions are to be narrowly construed against the employers seeking to assert them . . . ." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

"However, the general rule that employees whose pay may be docked are not 'salaried' (and thus must be paid overtime) is subject to [] limitations." *Wolfslayer*, 2004 WL 2536833, at *6. Only partial-day deductions are prohibited by the Act. *Id.* (citing *Donovan v. Carls Drugs Co.*, 703 F.2d 650, 652 (2d Cir. 1983); *Mich. Ass'n of Gov't Emps. v. Mich. Dep't of Corr.*, 992 F.2d 82, 84 (6th Cir. 1993)). The regulations state that employers may make deductions for absences in full-day increments if "an exempt employee is absent from work for one of more full days for personal reasons." 29 C.F.R. § 541.602(b)(1). Similarly, an employer may also make full-day pay deductions if the employee is absent due to sickness or disability and the employee has exhausted his leave under the employer's bona fide benefits plan. *Id.* § 541.602(b)(2).

## IV.   Discussion

Below, the Court first addresses whether SEI's practice of docking Plaintiffs' full-day absences over two workweeks and two paychecks compromises Plaintiffs' exempt status. Second, the Court determines whether SEI's policy defining its workweek beginning and ending at noon each Friday violates the FLSA by necessarily leading to partial-day deductions.[3]

---

[3] In Part IV.A, where the Court addresses deductions from Plaintiffs' paychecks, the Court focuses its analysis on Mr. Amer, who is the only named Plaintiff from whom SEI made deductions. Mr. Malkovskiy, the other named Plaintiff, never experienced deductions from his weekly salary during his tenure with SEI. (*See* Keddie Decl. Ex. D). To the extent Plaintiffs challenge SEI's *policy*, which, they argue, necessarily leads to prohibited deductions as

## A.  Plaintiffs' Status as Exempt Employees

SEI's practice of docking Plaintiffs' full-day Friday absence over two paychecks does not jeopardize Plaintiffs' status as exempt employees because the practice falls within 29 C.F.R. § 541.602(b).  That regulation provides that an exempt employee may be docked for a full-day absence but may not be docked for a partial-day absence, *see* 29 C.F.R. §541.602(b), and here, SEI only docked Plaintiffs for full-day absences.

SEI argues that the deductions taken from Mr. Amer's checks were for a full day of pay for full-day absences that occurred after Mr. Amer had exhausted his sick and vacation leave, and therefore Mr. Amer's pay deductions fell within the exception enumerated in 29 C.F.R. § 541.602(b)(2).  (SEI Moving Br. at 8, 10).  In opposition, Plaintiffs argue that SEI is not exempt under the FLSA because as part of its payroll policy, SEI had a practice of spreading partial pay deductions for employee absences over multiple workweeks, specifically because its workweek and pay period began and ended at noon each Friday, and therefore inherently resulted in partial-day deductions for Friday absences.  (Pl. Opp. Br. at 1, 6).  On reply, SEI argues that Mr. Amer received a weekly predetermined salary as required for the FLSA exemption and that its Friday noon to Friday noon workweek was lawful and did not create partial-day salary deductions because Mr. Amer received salary deductions for full shifts extending across two pay periods.  (SEI Reply Br. at 2, 3).  The Court finds that SEI has the better argument, that SEI's practices did not violate the FLSA, and that Mr. Amer was an exempt employee for two reasons.

First, Mr. Amer was a salaried employee, whom SEI docked under a bona fide benefits plan.  (*See* Keddie Decl. Ex. A (disclosing Mr. Amer's "bi-weekly *salary*" in his employment

---

applied to employees like Mr. Amer and Mr. Malkovskiy, the Court primarily addresses these arguments in Part IV.B.

offer letter) (emphasis added); Keddie Decl. Ex. B ("Full-Time Salaried . . . Employees, who are absent from work for vacation, illness or injury in excess of sick leave provided . . . may take time off without pay.  (Exempt Employees must be paid for a full regularly scheduled workday if any part of the day is worked or charged to vacation.  Exempt Employees who request time off without pay must do so in full day increments.")).[4]  SEI's only deductions from Mr. Amer's paychecks—which occurred on Friday, December 12, 2008 and Friday December 19, 2008— occurred after December 11, 2008, when Mr. Amer had exhausted his sick leave under SEI's policy.  (*See id.* Ex. F at 2).  Accordingly, SEI's deduction fell within the "bona fide benefits plan" language of 29 C.F.R. § 541.602(b)(2).

Second, and more critically for purposes of SEI's motion, SEI only docked Mr. Amer's pay based on full-day absences.  Mr. Amer took full-day absences on Friday, December 12, 2008 and Friday, December 19, 2008.  On both occasions, SEI docked Mr. Amer for a full-day—eight hours—but, because SEI's workweek runs from noon on Friday to noon on Friday, SEI split the eight-hour absences between two separate workweeks.  It is this "splitting" that forms the basis of Plaintiffs' Amended Complaint, and Plaintiffs' primary contention as to why SEI's policies and practices fail the "salary basis" test for administrative exemption under FLSA.[5]

As to December 12, 2008, SEI allocated the first four hours (8 AM to 12 PM) to the first workweek within the pay period, and they allocated the second four hours (12 PM to 4 PM) to

---

[4] For purposes of this motion, the Court considers the materials contained in the Declaration of Christina S. Keddie in Support of Defendant Shaw Environmental, Inc.'s Motion for Judgment on the Pleadings, ("Keddie Decl."). These materials include Plaintiffs' time and payroll records and SEI's leave policies, which are integral to the Amended Complaint because a threshold question for purposes of this motion is whether SEI made deductions from Plaintiffs' salary for full-day absences in accordance with a bona fide sick plan.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[5] In a footnote, Plaintiffs also note that Mr. Amer was absent on one Wednesday of the following year (December 11, 2009), but that SEI did *not* dock Mr. Amer for that absence.  (Pl. Opp. Br. at 9 n.7).  Plaintiffs argue that this shows that SEI's payment to Mr. Amer fluctuated with the quantity of work.  (*Id.*).  The Court rejects this argument because Plaintiffs fail to address whether this absence fell within Mr. Amer's allotment of days off for 2009.

the next workweek.  (Keddie Decl. Ex. E at 6, F at 2-3).  As to December 19, 2008, the absence

spanned two workweeks and two separate pay periods, so the first half of the full-day absence

(four hours) was reflected in the December 26, 2008 paycheck, and the second half of the full-

day absence (four hours) was reflected on Mr. Amer's next paycheck (January 9, 2009).  (*Id.* Ex.

E at 10, F at 4).  Therefore, the Court finds that for both full-day, eight-hour absences, SEI

docked Mr. Amer for a full day.  To find otherwise—in particular, to find that two continuous

four-hour time blocks did not equal one eight-hour time block—would constitute a hyper-

technical interpretation of 29 C.F.R. § 541.602(b)(2), which "shall not be construed in an unduly

technical manner so as to defeat the exemption."  29 C.F.R. § 541.603(e).[6]

The Court agrees with SEI's argument that "[t]he regulations do not prohibit deducting

less than a full day of pay for a full-day absence; nor do they prohibit an employer from

spreading out a deduction over multiple pay periods.  The focus, rather, is on whether the

absence was for a full-day or not."  (Moving Br. at 8).  This absence-based inquiry is evident on

the face of 29 C.F.R. § 541.602, which makes clear that the prohibition relates to docking an

employee for a partial-day *absence*.  *See* 29 C.F.R. § 541.602(b)(1) ("Thus, if an employee is

absent for two full days to handle personal affairs, the employee's salaried status will not be

affected if deductions are made from the salary for two full-day *absences*.  However, if an

exempt employee is absent for one and a half days for personal reasons, the employer can deduct

only for the one full-day absence.") (emphasis added).  Thus, the regulation prohibits a partial

---

[6] Defendant also rebuts Plaintiffs' hyper-technical argument with a technical argument of its own.  *See* (SEI Reply Br. at 5) ("Even if one were to accept the premise that Mr. Amer was scheduled to work on 'two' separate days on a Friday, he still did not miss a partial-day of work.  Based upon Plaintiffs' interpretation of their workweek, the work performed by Mr. Amer on the first-half of the Friday is a full-deduction for a four-hour day, while the second-half of the Friday, which was a new workweek, is a full-day deduction for that subsequent four-hour day.  Put differently, Plaintiffs cannot avoid the undisputed fact that Mr. Amer's Friday absences, regardless of the fact that they overlapped between workweeks or pay periods, were not partial-day absences.").

day deduction for a partial day absence; but it does not prohibit the equivalent of a full-day deduction for "absences of one or more full days."  *See Id.* § 541.602(b)(2).

In fact, in a 1999 FLSA Opinion Letter, the Office of Enforcement Policy Fair Labor Standards Team explained that even a four-hour deduction for a full-day absence would not "jeopardize[] the exempt status of the employee" where the employee "is absent *for a full day* for personal reasons and there is only enough PTO Credit in the PTO account to cover 4 hours." Opinion Letter Fair Labor Standards Act (FLSA), 1999 WL 1002408 (Cir. Ct. May 27, 1999) (emphasis added).   Accordingly, in the present case, Mr. Amer's exempt status was not jeopardized by a full-day absence resulting in two consecutive four-hour deductions over two consecutive workweeks and paychecks when Mr. Amer had exhausted his entire bank of hours.

Instead of accepting this absence-based inquiry, Plaintiffs invert the analysis, first looking at the deductions—two consecutive four-hour blocks of time—and then arguing that each four-hour deduction represents a *half-day absence*.   However, the case law that Plaintiffs cite in support of this interpretation undercuts their argument.[7]  Specifically, Plaintiffs are unable to cite any decision in which a court has found that a full-day, eight-hour absence resulting in two consecutive four-hour deductions violates the FLSA.   Instead, Plaintiffs cite cases that squarely contradict its position, and support SEI's position.   The following language from the Fifth Circuit's decision in *Cowart v. Ingalls Shipbuilding, Inc.* is instructive:

> Plaintiffs cite no decision, rule or regulation in which the Department of Labor or any court has determined that [defendant's] "eight consecutive hours" [policy] provision constitutes an impermissible deduction.   This is because there is no such decision, rule or regulation.   Furthermore, [defendant] asserts that during the course of a Department of Labor investigation of [defendant's] compensation practices in the 1980's, [defendant] was assured by the Department of Labor that a personal absence of eight consecutive hours over two days would be considered an absence of a full day or more, not a partial day, for purposes of the salary basis

---

[7] Notably, the parties do not cite, and the Court is unaware of any binding case law addressing the issue of whether two consecutive four-hour deductions as a result of an eight-hour full-day absence violate FLSA.

> regulations, and that *deducting from an employee's salary for a personal absence of eight or more hours over two days would not jeopardize that employee's exempt status*.

*Cowart v. Ingalls Shipbuilding, Inc*., 213 F.3d 261, 265 (5th Cir. 2000) (emphasis added).

Additionally, the Court finds that Plaintiffs' citations to decisions relating to partial-day absences are unpersuasive because they are distinguishable from the concededly full-day absences in the present case. *See Friedman v. S. Fl. Psychiatric Assocs., Inc.*, 139 F. App'x 183, 185 (11th Cir. 2005) ("A deduction for a partial day's absence is not one of the allowable deductions. Thus, the salary basis of pay was violated, and [plaintiff] was rendered a non-exempt employee and was entitled to overtime.") (internal citation omitted); *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 534 (7th Cir. 1999) ("If an employer docks an employee's pay for partial day absences, violations of rules other than those of safety, or based on the quantity or quality of the employee's work, the employee is not considered to be on a salary basis."); *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 617 (2d Cir. 1991) ("In sum, the evidence before the district court clearly showed that until December 8, 1988, MP maintained a policy of docking pay to grade 6 through 9 employees for fractions of the workday they missed."); *Scholtisek v. Eldre Corp.*, 697 F. Supp. 2d 445, 453-54 (W.D.N.Y. 2010) ("[T]he evidence clearly shows that there was an actual practice in effect [by defendant] of docking nominally exempt employees' pay for partial day absences . . . . Thus, [defendant] loses the exemption for the employees . . . .); *De Los Santos v. Just Wood Furniture, Inc.*, No. 05-9369, 2009 WL 1616497, at *2, *6 (S.D.N.Y. Jan. 14, 2009) (finding that "plaintiff may be owed overtime payments for his time as a driver" where six of the thirteen deductions were for partial days); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 457 (S.D.N.Y. 2008) ("[C]lass members frequently received paychecks with a gross pay notation that ranged either above or below the expected

compensation for the hours scheduled. That figure was tied directly to the number of hours actually worked."); *Thomas v. Cnty. of Fairfax, Va.*, 758 F. Supp. 353, 362 (E.D. Va. 1991) ("[A] lieutenant's pay under the pre-August 24, 1990 pay scheme varies directly with the amount of time worked . . . .").

Finally, Plaintiffs cite cases that do not relate to full-day absences deducted across two calendar days. *See Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008) ("We conclude that the tiered compensation system at issue satisfies the pertinent tests and plaintiff was not entitled to overtime compensation."); *Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512, 516 (6th Cir. 2004) (finding that employees would still be exempt even under a policy requiring them to make up for partial absences either by working extra hours or by taking vacation time or paid time off).

Based on the face of the regulation in addition to the relevant case law, the Court finds that Mr. Amer's full-day, eight-hour absences that resulted, each time, in two consecutive four-hour deductions did not jeopardize his exempt status. Both his absences and his deductions spanned eight consecutive hours; finding otherwise would amount to a hyper-technical approach.

### B.    SEI's Policy and the Workweek

Similarly, the Court finds that SEI's vacation/absence policy does not violate the workweek measuring rules in 29 C.F.R. §§ 778.104, 105. Plaintiffs argue, "Defendant completely fails to address the fact that its purported 'full-day' deductions were actually partial day deductions spread over multiple workweeks," and in doing so, "Defendant completely ignores the workweek standard that is the linchpin of the FLSA, [and] instead suggests that some period other than the workweek (that Defendant itself selected) should be used in assessing compliance with the requirements of FLSA." (Pl. Opp. Br. at 6). In support, Plaintiffs cite a

number of cases (discussed below) as well as 29 C.F.R. §§ 778.104, 105. In effect, Plaintiffs argue that SEI's chosen policy—a noon on Friday to noon on Friday workweek—precludes the assessment of a full-day deduction when an employee's absence falls on a Friday. This argument fails under the regulations and the case law for two reasons.

First, under the regulations and relevant case law—indeed the case law cited by Plaintiffs themselves—an employer is permitted to set its own workweek.[8] Section 778.105 provides:

> An employee's workweek is a fixed and regularly recurring period of 168 hours— seven consecutive 24-hour periods. *It need not coincide with the calendar week but may begin on any day and at any hour of the day.* For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees.

29 C.F.R. § 778.105. Under this provision, the Court finds that because SEI's workweek contains seven consecutive 24-hour periods, it does not violate § 778.105.

Second, the Court rejects Plaintiffs' "consequences"/"burdens" argument, which is closely related to Plaintiffs' exemption status argument that the Court rejected above. As to consequences and burdens, Plaintiffs argue, "having defined its workweek as such, Defendant is

---

[8] In their Opposition, Plaintiffs concede this point, (Pl. Opp. Br. at 7), but then go on to cite cases containing the proposition that later-paid overtime to non-exempt employees does not make up for failing to timely pay overtime. These cases are distinguishable from the present case, in which Plaintiffs are salaried exempt employees and in which there is no indication that SEI has tried to compensate for unpaid overtime with later-paid bonuses. The Court finds that there is no similarity between SEI's permissible consecutive four-hour deductions for full-day eight-hour absences and the situation in the cases cited by Plaintiffs where employers attempted to make up for the nonpayment of overtime to hourly employees by paying a lump sum bonus at a later time (*e.g.*, an annual bonus). *See United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960) ("At the time the present prosecution was commenced [hourly-based security guards] had been unpaid for approximately a year. Final payment was not made until seventeen months after the rendering of the services in question. Such delayed payment does not meet the requirements."); *Roland Elec. Co. v. Black*, 163 F.2d 417, 421 (4th Cir. 1947) (finding that failure to pay overtime to non-exempt hourly employees "promptly and when due on any regular payment date" violated FLSA and that later-paid or year-end bonuses did not bring the employer back into compliance). Additionally, Plaintiffs cite *Dove v. Coupe* for the non-controversial and conceded proposition that the workweek, instead of the hour, is the measuring rod for overtime payments to hourly employees. The measuring rod for overtime compliance, "a workweek longer than forty hours," is explicitly established by statute. *See Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985); *see also Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 633 (D. Md. 2005) ("[N]othing in any of these regulations can be read to relieve Defendants of the obligation to pay no less than the minimum wage for each workweek within a pay period on that regular payday for that workweek."). To be sure, the Court agrees that the workweek is the relevant measuring rod for payment, and, based on its reasoning above, the Court finds that SEI properly used and applied that measure.

bound to accept both the benefits and consequences of its defined workweek (*e.g.*, reduced overtime obligations), but refuses to face the consequences of its defined workweek." (Pl. Opp. Br. at 7). Essentially, Plaintiffs argue that, having set its workweek from noon on Friday to noon on Friday, SEI should pay time and one-half overtime to salaried employees who are absent for a full, eight hour Friday when the deduction is in the form of two sequential four-hour deductions. However, this "benefits" and "consequences" argument simply re-frames Plaintiffs' salary status arguments rejected above, and the Court finds Plaintiffs' re-formulation of the argument unpersuasive. Under Plaintiffs' formulation, the benefits (reduced overtime obligations) and the burdens (increased overtime obligations) are, in effect, the same thing. Both are tied to a determination of whether Plaintiffs are or are not exempt employees, and therefore Plaintiffs' argument assumes what it attempts to prove. The Court has already held that SEI's employees are exempt and are not owed time and one-half overtime payments. As such, SEI's nonpayment is not a benefit, but a permissible legal consequence. Plaintiffs have not offered any other purported "benefits" for the Court to assess.[9]

---

[9] Plaintiffs also argue that "because the work encompasses two pay periods, Plaintiffs are working on two days, and Defendant's two four-hour deductions result in improper/illegal partial day deductions in each week." (Pl. Opp. Br. at 9). Accordingly, Plaintiffs argue, SEI's policy results in a "combination or average" in violation of 29 C.F.R. § 778.104. (*Id.* at 7, 10). Section 778.104 provides:

> The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40.

29 C.F.R. § 778.104. This provision ensures that an employer does not "averag[e]" an hourly employee's time over the course of two weeks for purposes of decreasing overtime payments. It would be a stretch to accept Plaintiffs' argument that the deductions from Mr. Amer's paychecks for his full-day absences were the result of the type of "averaging" prohibited by § 104. Indeed, to accept this argument would be, as Defendants state, to "confuse splitting a deduction for a full-day absence over multiple workweeks with failing to pay overtime to a non-exempt employee for hours worked *during* the particular workweek." (SEI Reply Br. at 5).

**V.      Conclusion**

For the foregoing reasons, the Court finds that, viewed in the light most favorable to Plaintiffs, SEI has satisfied its burden of clearly establishing that no material issue of fact remains to be resolved and that SEI is entitled to judgment as a matter of law that its policy and practice satisfied the salary basis test under FLSA.  To the extent Plaintiffs wish to pursue their claims, they are permitted to proceed under the duties tests alone.


                                        *s/Esther Salas*
                                        **Esther Salas, U.S.D.J.**